IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Megan May-Ann Spranger, | ) | Case No.: 5:04-1533-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Shealy's Mack Truck Center, Inc. | ) | |
| Group Medical Plan, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

In this case, the parties have agreed that the matter before the Court involves solely a question of plan interpretation. There is no dispute of relevant fact, and the parties have agreed that the Court may dispose of this matter based upon the joint stipulation filed along with the parties cross motions for summary judgment and supporting memoranda.

**Factual and Procedural History**

On May 14, 2004, Plaintiff Megan May-Ann Spranger commenced the present action against Shealy's Mack Truck Center, Inc. Group Medical Plan ("Plan"). This lawsuit arises out of the Plan's termination of Ms. Spranger's coverage for dependent benefits. The matter is before the Court on the parties' cross-motions for summary judgment. The parties stipulate as to relevant facts and the belief that there is no dispute as to relevant fact. Plaintiff seeks declaratory relief pursuant to ERISA 29 U.S.C. § 1132(a)(1)(B) as to whether or not she was eligible to participate in and covered by the defendant's self-funded ERISA governed employee health benefits plan for the period August 30, 2003 through March 2004. The parties agree that this matter involves a fundamental issue under ERISA (i.e. whether plaintiff continued to be eligible to participate in the

1

subject plan) rather than a benefit claim denial and that, therefore, the matter would not benefit from application of any exhaustion requirement. The Court concurs that the matter is appropriate for disposition by way of summary judgment as it does not involve any dispute of relevant fact.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) as this matter arises under the Employee Retirement Income Security Act of 1974 ("ERISA"). Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) and 29 U.S.C. § 1132(e)(2).

The present matter arises under ERISA, 29 U.S.C. § 1001 *et seq*., as it involves benefits from an employer-sponsored benefit plan. After having considered the stipulated facts, relevant submissions of the parties, and the parties' respective briefs and arguments, the Court has determined that granting summary judgment to the Plaintiff is appropriate. Accordingly, the Plaintiff's motion for summary judgment is granted and the Defendant's motion for summary judgment is denied.

The facts before the Court are undisputed. Ms. Spranger is the daughter of a former employee of Shealy's Mack Truck Center, Inc. Plaintiff's father was actively employed on a full-time basis with Shealy's from before December 1, 2002, and continuously until April 2004. As a full-time active employee, Plaintiff's father participated in Shealy's health benefits plan. Shealy's Mack Truck Center, Inc.'s benefits plan is governed by ERISA and constitutes a legal entity pursuant to ERISA, 29 U.S.C. § 1132(d).

From prior to December 1, 2002, and continuously until August 30, 2003, plaintiff also participated in Shealy's plan as an eligible dependent of her father. Plaintiff was born on September 7, 1982. Through the spring of 2003, Plaintiff was a full-time student at Midlands Technical College. On June 18, 2003, after the conclusion of the spring semester, plaintiff was

involved in a serious automobile accident and suffered a spinal cord injury that rendered her a quadriplegic. On or around July 8, 2003, defendant began receiving plaintiff's claims for medical expenses. The Plan paid $134,929.91 for health care services rendered from June 18, 2003 until August 31, 2003. In October 2003, plaintiff's father made inquiries concerning plaintiff's continued status as a dependent under the Plan. Pursuant to the Plan's request, plaintiff submitted a physician's statement. The attending physician's statement indicated that Ms. Spranger suffered incomplete quadriplegia resulting from the spinal cord injury. The physician also concluded that Ms. Spranger was unable to return to Midlands Technical College for the Fall 2003 semester due to her injury and hospitalization.

After consulting outside professionals specializing in group health plans, the Plan determined that Ms. Spranger was no longer eligible for coverage as a student dependent. When plaintiff failed to return to school for the Fall Semester, plaintiff's health coverage was terminated with an effective date of August 31, 2003. Ms. Spranger returned to full-time enrollment at Midlands Technical College in time for the 2004 Spring Semester, which commenced in January. After informing the Plan in March 2004 of her return to school, Ms. Spranger was given the opportunity to re-enroll in the Plan. She declined to do so because she would have been subject to the preexisting condition limitation due to a break in service.

That plaintiff takes the position that despite the fact that she was not enrolled in school full-time during the fall semester of 2003 that she should have been covered by and allowed to participate in the defendant plan due to the specific plan provisions referenced below. The defendant does not agree and takes the position that plaintiff ceased to be eligible to participate in the plan effective August 30, 2003. This Court's decision turns on the definition of "semester."

Also at issue is the standard of review for this Court to apply. The plaintiff argues that the Court should apply a *de novo* standard of review because the matter before the Court is not a benefit claim. The defendant, on the other hand, argues that the abuse of discretion or modified abuse of discretion standard is appropriate.

## RELEVANT TERMS OF THE PLAN

The parties have stipulated that the following plan provisions govern eligbility for coverage as a dependent:

> **DEPENDENT ELIGIBILITY**
> A Dependent will be considered eligible for coverage on the date the employee becomes eligible for dependent coverage, subject to all limitations and requirements of this Plan, and in accordance with the following:
>
> . . .
>
> E.     An unmarried child who reaches the age of nineteen (19) will remain eligible for coverage under this Plan if he/she is incapable of self-sustaining employment and is dependent upon the employee for 50% or over support due to mental or physical illness or handicap. Proof of incapacitation must be provided within thirty-one (31) days of the child's nineteenth (19) birthday and thereafter as requested by the Plan but not more than once every two years. The dependent must have been covered under this Plan before attaining the limiting age in order to be eligible for continued coverage.
>
> F.     An unmarried child age nineteen (19) or older but under the age of twenty-three (23), if such unmarried child is a high school student or a full-time student at an accredited university, college or trade school, and is chiefly dependent upon the employee for support.

With respect to the issue of student dependent status, the Plan specifically describes the circumstances in which a student dependent ceases to be a dependent for purposes of coverage. It provides:

> **TERMINATION OF COVERED DEPENDENT'S COVERAGE**
> Except as provided in the Plan's COBRA continuation provision coverage will terminate on the earliest of the following occurrences:

4

. . .

4.  The date the covered dependent ceases to meet the definition of a dependent; A Student Dependent is no longer an eligible student on the earliest of the following occurrences:

   A Student Dependent is no longer an eligible student on the earliest of the following occurrences;
   a.  The date of graduation;
   b.  The date he or she stops attending school full-time, if cessation is not due to Illness or Injury;
   c.  If a covered student dependent is unable to attend school full-time because of Illness or Injury, **the Plan will continue the coverage until the first day of the next regular semester or quarter following cessation of full-time attendance**.

(emphasis added).

## **DISCUSSION OF THE LAW**

The defendant states in its memorandum: "The Plan submits that the proper standard is the modified abuse of discretion standard." (At p. 3.) However, the in the body of the memorandum, the defendant argues that it's actions must be reviewed under the abuse of discretion standard because the Plan at issue provides the defendant, as plan administrator, with discretionary authority to interpret or apply the plan's terms and make factual determinations in connection with its review under the plan. It has long been settled that if a benefit plan grants the administrator discretion to determine eligibility or to construe the terms of the plan, the Court is to review the decision to deny benefits for an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). The Court agrees that the Plan explicitly grants the Plan Administrator, Shealy's Mack Truck Center, the discretion to determine eligibility for benefits and to interpret the Plan terms:

> The Plan Administrator has full discretionary authority to interpret and apply all Plan provisions, including, but not limited to, all issues concerning eligibility and

5

> determination of benefits.  The Plan Administrator may contract with an independent administrative firm to process claims, maintain plan data, and perform other Plan connected services; however, final authority to construe and apply the provisions of the Plan rests exclusively with the Plan Administrator.

(J.S. 7.)  If there is a conflict of interest "[t]he fiduciary's decision will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence, resulting from the conflict." *Stup v. UNUM Life Ins. Co.*, 390 F.3d 301 (4th Cir. 2004). In this case, defendant does not argue that a conflict does not exist.  Rather, it only argues that the conflict is inconsequential due to the defendant being covered by excess loss insurance, yet the defendant also indicates that the stop loss carrier was involved in the decision at issue in this case. (Defendant's Memo, p. 10.)

This Court finds that a modified abuse of discretion standard of review applies.  Under this sliding scale standard of review, "[t]he more incentive for the administrator or Fiduciary to benefit by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial evidence there must be to support it." *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997). "An administrator's decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Id*.  In assessing the reasonableness of a decision to deny benefits, the Court should consider:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth v. Wal-Mart Store, Inc.*, 201 F.3d 335, 342 (4th Cir. 2000).

The plaintiff argues for a *de novo* standard of review on the basis that such discretionary language is totally irrelevant to the matter because the plaintiff has not been denied benefits and there is no specific benefit claim before the Court. The issue for the Court to decide is whether the plaintiff was even eligible to participate in the Plan beyond August 30, 2003. No claims for benefits after this time have been denied because no claims have been processed. If the plaintiff is determined to be eligible to participate in the plan and entitled to coverage after August 30, 2003, then the defendant plan will presumably process claims for plaintiff for services rendered to her after August 30, 2003 and will then determine what, if any, amounts may be payable on those claims. Accordingly, the plaintiff argues the issue now before the Court is much more fundamental and basic than where a benefit claim has simply been denied.

The plaintiff argues that Fourth Circuit has stated that the exhaustion requirements of ERISA and, therefore, also the discretionary standards of review do not apply on non-benefit claims when more fundamental issues exist.[1] Plaintiff argues alternatively that even if a

---

1 *See Licensed Div. Dist No. 1 MEBA/NMU, AFL-CIO v. Defries*, 943 F.2d 474, 478-79 (4th Cir. 1991) (internal citations omitted) where the court stated:
> The instant case does not involve a benefit claim, however, instead it goes to the fundamental administration of a plan. Consequently, this case is distinguishable from suits involving claims, in which the intent of Congress that exhaustion occur is plain. This distinction is borne out by the conclusion in *Makar:* "In short, Congress intended plan fiduciaries, not the federal courts, to have primary responsibility for claims processing."" *Id.* at 83 (emphasis supplied). The same interests are not at stake, and the same congressional intent is not evident, when the dispute does not involve claims processing but the fundamental administration of a plan.
>     It is undisputed that the administrative appeals procedure ERISA requires in every plan does not apply to non-benefit challenges. *See* 29 U.S.C. § 1133 ("every employee benefit plan shall ... afford a reasonable opportunity to any participant whose *claim for benefits* has been denied for a full and fair review") (emphasis supplied). Yet it is this statutory requirement upon which the judicially-created exhaustion requirement is grounded. *See Makar,* 872 F.2d at 83. It follows, therefore, that if there is no statutory requirement for an appeals procedure respecting claims not involving benefits, the logic of the exhaustion requirement no longer applies. That this particular plan had no procedures for appeals of non-benefit issues is further evidence that the appeals procedure required by ERISA § 1133 has no application to non-benefit challenges. As the Second Circuit concluded, "although common law may have required a prior demand before bringing an

7

discretionary standard does apply to the fundamental issue of whether the plaintiff is entitled to coverage, the language of the plan is so clear regarding the relevant issue that there is absolutely nothing left to interpretation and, therefore, nothing for the Court to defer to regarding the defendant's interpretation. However, having found that the modified abuse of discretion standard of review applies and that, even under this standard, the defendant acted unreasonably and abused its discretion, as set forth below, this Court need not dwell further on plaintiff's argument for *de novo* review.

It is well established in the Fourth Circuit that where the language of an ERISA governed plan is clear and unequivocal that the court should apply such language: "The plain language of an ERISA plan must be enforced in accordance with its literal and natural meaning." *Kress v. Food Employers Labor Relations*, 391 F.3d 563, 2004 WL 2830537 at *3 (4th Cir. 2004) (internal quotations omitted). "The award of benefits under any ERISA plan is governed . . . by the language of the plan itself. If the denial of benefits is contrary to the clear language of the [p]lan, the decision [of the fiduciary] will constitute an abuse of discretion." *Lockhart v. United Mine Workers of Am. 1974 Pension Trust*, 5 F.3d 74, 78 (4th Cir. 1993) (internal quotations and citations omitted).

Both parties agree that the plaintiff participated in the subject plan as an eligible dependent of her father until August 30, 2003. It is also undisputed in the record that the Plaintiff attended college full-time in the spring of 2003 and the spring semester of 2004. Also, defendant does not dispute that during the fall semester of 2003 Plaintiff was unable to attend college because of

---

action [challenging administration of a plan], Congress did not incorporate that doctrine into the ERISA statute." *Katsaros v. Cody,* 744 F.2d 270, 280 (2d Cir.1984).

injuries she suffered in her automobile accident which rendered her a quadriplegic.

The subject plan provides: "A student dependent is no longer an eligible student on 'the date he or she stops attending school full-time.'"  However, the specific language of the plan has an exception that coverage will not terminate if the student stops attending school full-time "if cessation is due to illness or injury."  The plan specifically provides that "If a covered student dependent is unable to attend school full-time because of illness or injury, the plan will continue the coverage <u>until the first day of the next regular semester . . . following cessation of full-time attendance</u>."

All parties concede that the Plaintiff was unable to attend school full-time in the fall of 2003 due to her severe injuries.  The real issue is when exactly was the Plaintiff excused from attendance under the terms of the plan and when should her coverage have terminated.

The Court finds that when plaintiff could not attend school due to her quadriplegia during the fall semester of 2003 her coverage should not have terminated on August 30, 2003, but should have continued until the first day of the semester following, which was the spring semester of 2004.  Plaintiff did attend school full-time during the spring semester of 2004 and, therefore, should not have had any break in coverage under the plain language of the plan.

Defendant argues that when Ms. Spranger completed her spring semester of 2003 that her coverage was properly terminated in August 2003 because the "semester" which Plaintiff skipped was the "summer semester."  The plan provides that if a person is out due to "illness or injury" that coverage will continue to the first day of the <u>next</u> " regular semester" <u>after</u> the "semester" a person ceases attendance because of disability.  Plaintiff concluded her spring 2003 semester, was rendered a quadriplegic on June 18, 2003, and then missed the fall 2003 semester due to her

disability. Therefore, her coverage would have terminated under the plan on the first day of the spring semester of 2004 **if** she had not then been enrolled in school at that time. However, since the plaintiff was enrolled and did attend the spring 2004 semester her coverage should have never terminated. The "regular semester" Plaintiff missed due to injury was the fall 2003 semester.

Defendant argues that plaintiff's coverage was continued due to her disability after the spring 2003 semester through the "summer semester" and, therefore, it reasons that coverage properly terminated on the first day of the fall semester of 2003 which was August 30, 2003. This argument greatly strains the meaning of the words "regular semester." The definition of "semester" is "either of the two usually 18-week periods of instruction into which an academic year is often divided." (*2003 Merriam-Webster, Incorporated*) There are only two (2) semesters in an academic year. The Defendant would have the Court hold that there are three (3) "semesters" in an academic year, those being the spring, summer and fall, but by the very definition of the word "semester," there can only be two (2) per year. To adopt defendant's reasoning, the Court would have to ignore the usual definition of "semester" which provides that there are "two (2) in an academic year" and hold that there can be three (3) semesters in an academic year.

Clearly, by employing the words "illness or injury" in the relevant plan term the plan contemplates that a student may have an unfortunate and disabling illness or accident that prohibits that student from attending for one semester and the plan clearly contemplates allowing a one semester "pass" as far as coverage is concerned if the non-attendance is due to disability. Clearly, the references in the plan document to a participant ceasing to attend because of an "illness or injury" contemplate that sometimes unfortunate circumstances occur and recognize that

10

there should be some leeway as far as health insurance coverage is concerned in such circumstances.

The plain, literal, and natural language of the plan contemplates that students who suffer unfortunate illness or injury such as Plaintiff are to be protected under the terms of the plan for one semester while they are out. Plaintiff was out of school or "ceased" attendance for one semester only and that semester was fall of 2003. It is not a fair or reasonable interpretation of the term "semester" to argue that there are three (3) semesters in a year with one of them being the "summer semester."[2] Clearly, the plan fiduciary abused its discretion and acted unreasonably. The defendant's decision is unreasonable in light of the usual, literal, natural, and plain meaning of "semester."[3]

Accordingly, the Court holds that the language of the defendant's plan document is clear and unambiguous. The Plan provides that students who suffer an illness or an injury and are, therefore, unable to attend school for one semester, will not lose their coverage until the first day of the following semester if they are not then enrolled. The defendant effectively concedes the language of the plan and the "one semester pass," but argues that plaintiff was provided her one "semester pass" during the "summer semester" of 2003. The Court finds that the defendant's argument is based upon a tortured and strained interpretation of the word "semester." Semester

---

2 The Court has found that the plan document is unambiguous and that plaintiff is entitled to the additional benefits she seeks under the unambiguous language of the plan. However, even if the plan document was not unambiguous, but was ambiguous or vague plaintiff would still be entitled to prevail. There are two rules of contract instruction which the Fourth Circuit has consistently employed to interpret ambiguities in ERISA governed plan documents. In the Fourth Circuit, the rules of *contra proferentum* and construing a contract consistent with the reasonable expectations of a plan participant have both been used repeatedly to interpret ambiguities in ERISA plan documents. (See *Bynum v. CIGNA Healthcare of NC, Inc.*, 287 F.3d 305 (4th Cir. 2002); *Wheeler v. Dynamic Engineering*, 62 F.3d 634 (4th Cir. 1995); *Bailey v. Blue Cross Blue Shield of VA*, 67 F.3d 53 (4th Cir. 1995).) Both rules of construction favor Plaintiff's cause.

3 While this Court has held that the appropriate standard of review is modified abuse of discretion. this Court's holding would be the same under either a modified abuse of discretion or *de novo* standard of review.

11

has a clear and defined meaning and is not ambiguous or vague in any way as applied to the facts of this case.  Accordingly, plaintiff last actively attended college until the end of the spring semester of 2003.  She was not able to attend school during the fall semester of 2003 due to illness or injury.  She re-enrolled and attended full-time beginning the spring semester of 2004.  Given the clear language of the plan, her coverage should have not have terminated effective August 30, 2003, but should have continued under the provisions of the plan continuously from the time she last attended school which is the end of the spring semester of 2003 up unto her re-enrollment at the beginning of the spring semester of 2004 and, therefore, she should not have had any break in coverage under the plan.

## CONCLUSION

The Court hereby declares that the plaintiff is entitled to coverage under the Plan continuously as set forth above and the Court makes such declaration pursuant to ERISA, 29 U.S.C.S. § 1132(a)(1)(B).  Plaintiff is entitled to judgment as a matter of law.  Consequently, plaintiff's motion for summary judgment is **GRANTED** and defendant's motion for summary judgment is **DENIED**.

**AND IT IS SO ORDERED.**

s/ R. Bryan Harwell<br>
The Honorable R. Bryan Harwell<br>
United States District Judge

August 15, 2005
Florence, SC